TOWN OF NORTHBRIDGE *vs.* TOWN OF NATICK; DEPARTMENT
OF SOCIAL SERVICES, third-party defendant.

Middlesex.   December 3, 1984. — February 13, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Education*, Special educational needs. *School and School Committee*,
Special educational needs, Reimbursement for special educational ex-
penses. *Administrative Law*, Agency's interpretation of regulation,
Standing.

Under G. L. c. 71B and implementing regulations promulgated by the
Department of Education, the town of Natick was responsible for the
costs of special educational services provided to the child of a Natick
resident while the child was temporarily in the custody of the Department
of Social Services, living in a community-based group care facility in
the town of Northbridge, and attending school in Northbridge. [72-75]
Where an agreement between several State agencies specifying how they
would address the special educational needs of children in the custody
of a State agency was not signed by any municipality and made no
reference to serving the interests of any party other than the agencies
involved and the children affected, the town of Natick had no standing
to argue that by virtue of the agreement the Department of Social Services
was responsible for the cost of special educational services provided to
the child of a Natick resident while the child was in the custody of the
Department of Social Services and living and attending school in the
town of Northbridge. [75-76]

CIVIL ACTION commenced in the Framingham Division of
the District Court Department on July 28, 1980.

On removal to the Superior Court Department, the case was
heard by *James L. Vallely*, J., on motions for summary judg-
ment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Edward P. Leibensperger* for the town of Natick.

*Henry J. Lane*, Town Counsel (*Joan Duckett* with him) for
the town of Northbridge.

*Stephen S. Ostrach*, Assistant Attorney General, for Department of Social Services.

ABRAMS, J. At issue is which governmental unit should bear the financial responsibility for special educational services provided pursuant to G. L. c. 71B when a child of a Natick resident, temporarily in the custody of the Department of Social Services (DSS), lives and attends school in Northbridge.

Northbridge commenced an action against Natick in a District Court to recover the costs of special education services provided to "John Doe." Natick removed the case to the Superior Court, pursuant to G. L. c. 231, § 104, answered Northbridge's complaint, and filed a third-party complaint against DSS. Mass. R. Civ. P. 14 (a), as amended, 385 Mass. 1214 (1982). The consolidated matter then came before the Superior Court on cross motions for summary judgment. In August, 1983, after a hearing, the judge denied Natick's motion for summary judgment against DSS, and granted summary judgment for Northbridge and DSS against Natick. Mass. R. Civ. P. 56, 365 Mass. 824 (1974). Natick filed its appeal and we transferred the case to this court on our own motion. We affirm.

The case was submitted on a statement of agreed facts. "John Doe" was born in 1972 and at all relevant times had a natural parent residing in Natick. Since February, 1978, he has been voluntarily placed by his parent in DSS custody. In August, 1978, DSS placed him in Sunshine Haven, a community-based group care facility in Northbridge. Sunshine Haven is not a "residential placement" as defined by 603 Code Mass. Regs. § 28, par. 502.6 (1981), and does not provide educational services to the children in its care. Further, DSS has interpreted an interagency agreement[1] as not applicable to the facts of this case. It is impracticable to transport him daily from Sunshine Haven to Natick and inappropriate for him to reside at home. Natick does have adequate special education services, but lacks appropriate community residential group care facilities suitable for John Doe.

---

[1] See *infra* at 73.

John Doe was referred to the Northbridge public schools and underwent an evaluation, in compliance with the special education laws, which determined that he was in need of special education services. As a result of that determination, Northbridge enrolled John Doe in various special education programs in its public schools for the school years 1978-1979 through 1982-1983, thereby incurring costs of $32,077. The town submitted expense statements to Natick from 1979 through 1983 seeking reimbursement, but Natick refused to pay these bills. It is also stipulated that the Department of Education (DOE) has interpreted the statutes and regulations governing special needs education as requiring Natick to pay for John Doe's educational services.

The case involves c. 766 (G. L. c. 71B, inserted by St. 1972, c. 766), which governs the provision of special education in Massachusetts. This statute requires every city, town or school district: (1) to identify the school age children residing in that district who have special needs; (2) to diagnose and evaluate the educational needs of such children; (3) to propose a special education program to meet those needs; and (4) to provide or to arrange for the provision of such special education programs. G. L. c. 71B, § 3. See *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 487 (1978); *Board of Educ.* v. *School Comm. of Amesbury*, 16 Mass. App. Ct. 508, 512 (1983). The DOE, together with the Departments of Mental Health and Public Health, has promulgated regulations which further address the question of fiscal responsibility for special education, 603 Code Mass. Regs. § 28, pars. 100 et seq. (1981). One such DOE regulation relied on by Northbridge and DSS provides that in certain circumstances the costs of students' receiving special education services in communities other than their residences shall be paid by the resident communities. 603 Code Mass. Regs. § 28, pars. 202.1(c), 202.1(d) (1981).[2] This is consistent with

[2] Section 28, par. 202.1, provides in part: "Each school committee shall satisfy all of the requirements of Chapter 766 of the Acts of 1972 and these regulations for the following categories of children:

"202.1(c) Children who live in a private residential school; or in a hospital . . . where the father, mother or guardian with whom such child lives when at

par. 202.1(a), which places financial responsibility for the child's special education on the school department for the district or town in which the child lives with his or her parent(s). Alternatively, financial responsibility is placed on the district in which the child has established residence as an adult. See *Boston* v. *Board of Educ.*, 392 Mass. 788, 793 (1984); *Commonwealth* v. *School Comm. of Springfield*, 382 Mass. 665, 668-669 (1981).

Natick bases its refusal to reimburse Northbridge on the provisions of an interagency agreement, "Clarification of Responsibilities for Children in the Custody of the Human Service Agencies" (agreement), which took effect in 1976, two years after the 1974 effective date of G. L. c. 71B. See St. 1972, c. 766, § 23. The agreement states that "[i]n order to facilitate more immediate and adequate service delivery to a small, circumscribed group of children, the Human Service Agencies and the Department of Education have agreed to the following interim agreement." The agreement states in paragraph one that "the agency with guardianship acts as the child's parent." Paragraph 2b, on which Natick relies, provides: "When the LEA [local education authority] has an adequate community based educational program for a child but there exists no adequate community based residential resource, the full cost of both education/instruction and care and support components of a residential placement will be borne by the Human Service Agency." The agreement further considers how special education expenses will be divided between the State and appropriate local education authorities in two other circumstances not relevant to the instant case.

---

home lives in the city, town or school district over which such school committee has jurisdiction.

"202.1(d) Children in a living situation other than that described in ¶ 202.1 (a), (b), and (c), where such children live in the city, town or school district over which such school committee has jurisdiction. Where such child has a father, mother or guardian living in the Commonwealth, the school committee responsible for such child pursuant to this paragraph may bill and receive payment for the costs of educating such child from the school committee with jurisdiction over the city, town or school district where such father or mother or guardian lives, which shall pay the costs of educating such child, upon receipt and certification of such bill."

Natick concedes that DOE's regulations concerning respon-sibility for special education, promulgated in accordance with G. L. c. 71B, govern this case. The applicable regulation states in part: "Where such child has a father, mother or guardian living in the Commonwealth, the school committee responsible for such child . . . may bill and receive payment for the costs of educating such child from the school committee with juris-diction over the city, town or school district where such father or mother or guardian lives . . . ." 603 Code Mass. Regs. § 28, par. 202.1(d). The regulation in effect states that North-bridge may bill Natick and must receive reimbursement for the costs expended on John Doe's education.

The parties agree that DOE has interpreted its statutes and regulations as placing on Natick fiscal responsibility for John Doe's educational services. Natick, however, argues that DOE's interpretation is without foundation. An agency's con-struction of its own regulation, however, is one to which con-siderable deference is due. See, e.g., *Therrien* v. *Labor Rela-tions Comm'n*, 390 Mass. 644, 650 (1983); *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979); *Amherst-Pelham Regional School Comm.* v. *Depart-ment of Educ.*, 376 Mass. 480, 491 (1978). DOE's interpreta-tion is a rational one based on our reading of both 603 Code Mass. Regs. § 28, par. 202.1(d) (1981), and G. L. c. 119, §§ 21 & 23 (A), and we therefore conclude Natick has not shouldered its "formidable burden in attempting to overcome the [agency's] determinations on such matters." *Greenleaf Fin. Co., supra.* See *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 851-852 (1977).

Natick asserts that because DSS is John Doe's guardian it acts as his parent for the purposes of par. 202.1(d). That con-tention is without merit. The agency with custody does have the power "to determine the child's place of abode, medical care and education." G. L. c. 119, § 21, as amended by St. 1978, c. 552, § 28. However, an acceptance of a child into DSS custody "shall entail no abrogation of parental rights or responsibilities [rather, it is] a temporary delegation of cer-tain rights and responsibilities necessary to provide the foster

care . . . agreed upon by both and terminable by either." G. L. c. 119, § 23 (A). Although DSS stands in loco parentis, its rights and responsibilities in relation to the child are carefully limited by the statute and the temporary placement does "not entail a transfer of all the rights subsumed in legal custody." *Civetti* v. *Commissioner of Pub. Welfare,* 392 Mass. 474, 488 (1984). The purpose of John Doe's transfer to DSS custody under G. L. c. 119, § 23 (A), was only to aid him in obtaining the appropriate residential care and educational services, not to place full legal responsibility in the agency. The DSS, therefore, is not a parent for purposes of par. 202.1(d).

Natick also argues that the interagency agreement establishes that DSS is responsible for the full costs of the educational services provided for John Doe. We need not interpret the substantive provisions of the agreement, however, because Natick lacks standing to enforce it. The agreement was made between several State agencies specifying how they will address the special education needs of children in the custody of a State agency. Because the agreement is neither signed by Natick nor any other local authority and makes no reference to serving the interests of any party other than the agencies involved and the children thereby affected, no rights of enforcement are conferred on Natick.

"A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Penal Inst. Comm'r* v. *Commissioner of Correction,* 382 Mass. 527, 532 (1981), quoting *Massachusetts Ass'n of Indep. Ins. Agents & Brokers* v. *Commissioner of Ins.,* 373 Mass. 290, 293 (1977). An injury alone is not enough; a plaintiff must allege a breach of a duty owed to it by the public defendant. *Penal Inst. Comm'r, supra* at 532. See *Group Ins. Comm'n* v. *Labor Relations Comm'n,* 381 Mass. 199, 204 (1980). The agencies entered into the agreement in order to facilitate delivery of services to special needs children in their custody and to allocate costs among themselves, not to aid local education authorities.

Natick was not "within the area of concern" of the agreement and therefore lacks standing to enforce its provisions.[3]

Furthermore, even if Natick did have standing, the agreement is consistent with the regulations because the section of the agreement on which Natick relies to shift the financial burden to the State applies only to "residential placements."[4] The parties have stipulated that John Doe's placement was not a residential placement. Thus, Natick's reliance on paragraph 2b of the agreement is misplaced.

Moreover, even if the regulations promulgated by DOE were inconsistent with the agreement, the regulations would control. The agencies had the power to set internal guidelines for carrying out their duties "without going through the procedures required for the promulgation of a regulation," *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 313 n.26 (1981), but such policy statements do not have the legal force of a statute or regulation. *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 371 Mass. 705, 707 (1977). *Tinkham* v. *Department of Pub. Welfare*, 11 Mass. App. Ct. 505, 514 (1981). An agency must follow its own regulations even in the face of inconsistent internal guidelines. See *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, *supra* at 491-492.

General Laws c. 71B and DOE's implementing regulations therefore place responsibility on Natick for John Doe's special education expenses. We affirm the Superior Court judge's denial of Natick's motion for summary judgment against DSS, and affirm summary judgment for Northbridge and DSS against Natick.

*Judgments affirmed.*

---

[3] Natick's argument that it can enforce the agreement as a third-party beneficiary is also without merit because at best it is an incidental, not an intended, beneficiary. See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 546 (1979).

[4] Because Sunshine Haven does not provide John Doe with educational services, under the regulations it is not a residential placement.