INDEPENDENCE PARK, INC. *vs.* BOARD OF HEALTH
OF BARNSTABLE & another [1]
(and a companion case [2]).

Nos. 87-234 & 87-235.

Barnstable. January 13, 1988. — March 18, 1988.

Present: DREBEN, KASS, & SMITH, JJ.

Further appellate review granted, 402 Mass. 1103 (1988).

*Health, Board of. Subdivision Control. Regulation.*

Where a town's board of health, by a regulation promulgated under G. L.
c. 111, § 31, required that certain lots or new buildings located within
3,000 feet of a sewer line be connected to the public sewer but had made
no provision to require any lots or buildings farther from a sewer line to
be so connected, the board of health, acting pursuant to G. L. c. 41, § 81U,
was precluded from recommending to the planning board that certain lots
depicted on a definitive subdivision plan, all of which were more than
3,000 feet from a municipal sewer line, be connected to the sewer. [490-493]

CIVIL ACTIONS commenced in the Superior Court Department
April 14, 1986, and June 5, 1986, respectively.

The cases were heard by *Francis W. Keating,* J., on motions
to dismiss.

*Michael D. Ford* for the plaintiff.

*John H. Henn (Robert D. Smith* with him) for the defendants.

DREBEN, J. This action, brought under G. L. c. 41, § 81BB,
is a sequel to *Independence Park, Inc.* v. *Board of Health of
Barnstable, ante* 133 (1987) (*Independence Park I*), and, again,
the developer claims protection under G. L. c. 111, § 127P.
That statute, the developer asserts, precludes the board of health
(board) from making a recommendation under G. L. c. 41,
§ 81U, which is more onerous than the board's regulations.
A judge of the Superior Court allowed the defendants' motions

---

[1] The action was also brought against the planning board of Barnstable.
That board is precluded from approving a subdivision plan which does not
comply with recommendations of the board of health. *Loring Hills Develop-
ers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 348 (1978). *Fairbairn*
v. *Planning Board of Barnstable,* 5 Mass. App. Ct. 171, 173-174 (1977).
The dispute of the developer is primarily with the board of health.

[2] The companion case is between the same parties. The issues in the two
cases are identical, but the cases involve different parcels of land.

to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), and the developer brings this appeal. We reverse.

1. *Board of health "Ground Water Regulation."* The board's recommendation was that the developer connect all buildings to the public sewer. In order to determine the relation of that recommendation to the board's regulation, we turn to the "Ground Water Protection" regulation, promulgated under G. L. c. 111, § 31, which is set forth in full in the Appendix to this opinion.

The regulation's stated purpose is to protect ground water; it also states that "high density housing can . . . cause serious deterioration of . . . groundwater by nitrate contamination," and that housing units should be on one-acre parcels in order that the maximum recommended nitrate limit not be exceeded. After those introductory comments, the regulation provides that, in "zones of contribution to a public supply well" (the subdivisions here involved are in such a zone), subdivisions "within 3,000 feet" of a municipal sewer line must connect all lots to the town sewer if any lot in the subdivision is less than one acre. In such zones all new multi-family and commercial buildings within 3,000 feet of a municipal sewer line must also connect to the public sewer. Outside such zones, new construction within 3,000 feet of a sewer line may be required to be connected to the town sewer if the board makes certain determinations. Variances to the regulation may be granted by the board.

The complaint alleges that no lot within the subdivisions here involved is within 3,000 feet of a municipal sewer line. If the regulation is dispositive, this allegation, if true, would relieve the developer from a duty to connect. The regulation's tie-in requirement where lots or buildings are within 3,000 feet of a municipal sewer line in zones of contribution implies that where lots or buildings are not within 3,000 feet there is no such obligation. This inference is strengthened by the provision which permits the board in certain cases to order a tie-in outside zones of contribution for new construction, but here, too, only for construction which is within 3,000 feet of a town sewer line. No such discretion to order a tie-in is reserved for lots

not within 3,000 feet of a sewer line, whether within or without such zones of contribution.

This reading is the ordinary meaning of the regulation, whether looked at by laymen, see *Cochis* v. *Board of Health of Canton*, 332 Mass. 721, 726 (1955) (board of health likely to be composed of laymen), or by lawyers. See *Glorioso* v. *Retirement Bd. of Wellesley*, 401 Mass. 648, 650 (1988), and cases cited ("a [regulatory] expression of one thing is an implied exclusion of other things omitted from the [regulation]").

2. *Relation of regulation promulgated under G. L. c. 111, § 31, to recommendation under G. L. c. 41, § 81U, and effect of G. L. c. 111, § 127P.* The board claims that the regulatory scheme and the recommendation procedure under G. L. c. 41, § 81U, are independent of one another and that, under G. L. c. 41, § 81U, a portion of which is set forth in the margin,[3] the board is authorized to make "narrowly tailored" recommendations to "adjudicate" the health and safety of a particular project without regard to any regulation. The developer, according to the board, is not entitled to protection under G. L. c. 111, § 127P,[4] from any such recommendations made by the board during this review process.

---

[3] The first paragraph of G. L. c. 41, § 81U, as amended by St. 1978, c. 422, § 1, reads in part:

> "When a definitive plan of a subdivision is submitted to the planning board . . . a copy thereof shall also be filed with the board of health . . .. Such health board . . . shall, within forty-five days after the plan is so filed, report to the planning board in writing, approval or disapproval of said plan, and, in the event of disapproval, shall make specific findings as to which, if any, areas shown on such plan cannot be used for building sites without injury to the public health, and include such specific findings and the reasons therefor in such report, and where possible, shall make recommendations for the adjustments thereof. Failure of such board . . . to report shall be deemed approval by such board . . .. When the definitive plan shows that no public or community sewer is to be installed to serve any lot thereon, approval by a board of health . . . shall not be treated as, nor deemed to be approval of a permit for the construction and use on any lot of an individual sewage system . . .."

[4] In relevant part, G. L. c. 111, § 127P, as inserted by St. 1981, c. 750, § 1, provides:

> "Whenever a person has submitted a subdivision plan, . . . the land shown on such plan shall be governed by provisions of the state en-

Such evisceration of § 127P is not warranted. We stated in *Independence Park I*, *ante* at 134, that the purpose of § 127P is plain. "The statute is designed to give a developer who has filed a plan the benefit of regulations which were in effect at the time that plan was filed 'during the time such plan is being processed'" (emphasis deleted).

One of the critical concerns of a municipality in approving a subdivision plan is sewage disposal, a subject vested exclusively in the board of health. See *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 176 (1977). While this concern was made more explicit in G. L. c. 41, § 81U, prior to its 1978 amendment,[5] the importance of sewage disposal as a matter for the board of health remains evident in the statute. See note 3, *supra*. See also G. L. c. 83, § 11, giving the board of health the power to require an abutter to a way in which there is a common sewer to tie in to such sewer. Sewage matters are also one of the primary concerns of the State environmental code. See 310 Code Mass. Regs. 15.00 (1986). Because of the importance of sewage disposal, and because that concern applies to almost all construction, the subject is an appropriate one for local and State regulation. If the board may ignore its sewage disposal regulations in its recommendations under G. L. c. 41, § 81U, the protection afforded by G. L. c. 111, § 127P, to developers of subdivisions against changes in the State environmental code or against changes in regulations of local boards of health becomes meaningless.

A more harmonious reading of the two statutes, see *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab.*

---

vironmental code, or of the provisions of local board of health regulations which differ from said code, which are in effect at the time of first submission of said plan. Said provisions shall apply during the time such plan is being processed, including the time required to pursue or await the determination of an appeal relative to said plan . . .."

[5] Prior to 1978, G. L. c. 41, § 81U, as amended by St. 1972, c. 749, § 1, contained the proviso "if a municipal sewerage system will service the proposed subdivision, then failure of the board to make such a report within forty-five days after the plan is filed with their office shall be deemed approval by [the] board." Compare the present statute, see note 3, *supra*.

*Policies & Bonds*, 382 Mass. 580, 585-586 (1981), and one which follows the general principle that an agency must follow its own regulations (see *Northbridge* v. *Natick*, 394 Mass. 70, 76 [1985]; *Crawford* v. *Cambridge, ante* 47, 49-50 [1987]), is that, when a board regulation covers the subject at issue, the board's recommendation must be consistent with the regulation. In such cases, the board's function under G. L. c. 41, § 81U, is to complement its regulation and fill any interstices which may appear in applying the regulation to a particular subdivision.

While the Legislature has not imposed the same requirements for boards of health as it has for planning boards, and the former, unlike the latter, are not under mandate to adopt regulations, there is no doubt that G. L. c. 111, § 127P, was added by St. 1981, c. 750, § 1, because of the same legislative purpose as led to the passage of the strict requirements of G. L. c. 41, § 81Q. See *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163 (1959). The Legislature wanted "a prospective subdivider [to] know in advance . . . what will be required of him" in areas covered by the State environmental code or board of health regulations. See *id.*; *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). See also the discussion in *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 153-154 (1959), showing legislative concern with provisions which seem to authorize arbitrary action by "overzealous city planners."

The judgments of dismissal are reversed, and the matters are remanded to the Superior Court for further proceedings consistent with this decision. If the plaintiff is entitled to judgment, summary or otherwise, the matter should be remanded to the board for new recommendations.

*So ordered.*

APPENDIX.

## GROUND WATER PROTECTION

The Board of Health, Town of Barnstable, Massachusetts, in accordance with, and under the authority granted by Section 31, of Chapter 111, of the General Laws of the Commonwealth of Massachusetts, hereby adopted the following rules and regulations after a public hearing at a meeting of the Board held on September 6, 1983.

*PURPOSE : The protection of ground water in the Town of Barnstable*

The ground resources of the Town of Barnstable are its sole source of water supply. It is now known and demonstrable that public supply wells draw water from a substantial land area. It is known from experience that high density housing can over time cause serious deterioration of ambient groundwater by nitrate contamination. It has been proven that nitrate contamination in drinking water can be a serious public health problem.

Calculations performed by Cape Cod Planning and Economic Development Commission indicate that housing units placed on one acre parcels will produce the maximum recommended planning limit of 5 ppm. nitrate-nitrogen in groundwater.

Proposed subdivisions within 3,000 feet of a municipal sewer line shall connect all building lots in the subdivision to the Town sewer if any lots in the subdivision are less than one acre and are located within a zone of contribution to a public supply well. Zones of contribution will be determined by the Board of Health.

All new multi-family dwellings within a zone of contribution to a public supply well within 3000 feet of a municipal sewer line shall connect to the public sewer.

All new commercial structures within a zone of contribution to a public supply well within 3000 feet of a municipal sewer line shall connect to public sewer.

Outside of the Zones of Contribution to Public Supply Wells, any new construction on lots of less than 1 acre that are within 3000 feet of a sewer line shall be considered for mandatory connection to said line if the Board of Health determines that onsite sewage disposal systems will contribute to the degradation of the water quality of private wells, lakes, ponds or coastal embayments.

VARIANCES to the regulation may be granted by the Board of Health after a hearing during which the applicant proves that the installation of onsite sewage disposal systems will not have a significant adverse [e]ffect on surface or subsurface public or private water resources. The Board in granting variances will consider if strict interpretation of this regulation would do manifest injustice to the applicant; however, the applicant must

demonstrate that the same degree of environmental protection required by this regulation can be achieved by other means.

This regulation is to take effect on the date of publication of this notice.