WILLIAM ROBERTS & others[1] *vs*. DEPARTMENT OF
ENVIRONMENTAL QUALITY ENGINEERING[2].

Barnstable. January 6, 1989. — May 3, 1989.

Present: WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Environment*, Coastal wetlands. *Department of Environmental Quality En-
gineering. Regulation. Administrative Law*, Regulations, Agency's in-
terpretation of regulation. *Evidence*, Expert opinion, Credibility of wit-
ness. *Words*, "Beach nourishment."

A restrictive order adopted by the Commissioner of Environmental Manage-
ment pursuant to G. L. c. 130, § 105, as then in effect, purporting to
restrict various activities on coastal wetlands in the town of Sandwich,
constituted a regulation rather than an adjudication, for purposes of
judicial review, where the order was intended "to apply prospectively
to land with similar geographical features in the same manner." [797]
In a declaratory proceeding by owners of land situated within coastal wet-
lands, a judge was warranted in concluding that the plaintiffs' proposed
leveling of the top of a large sand dune would constitute "beach nourish-
ment," permissible under a certain State restrictive order adopted pur-
suant to G. L. c. 130, § 105, where, although the responsible State
agency had not defined "beach nourishment" within the meaning of the
order, the judge properly based his findings on the testimony of expert
witnesses as to the meaning of the term as applied to the beach and
dune in issue. [798-799]

CIVIL ACTION commenced in the Superior Court Department
on May 3, 1984.

The case was heard by *Augustus F. Wagner, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

---

[1] William and Mary C. Smith, James and Elisabeth Dennett, Eunice
Carrier, Edward and Betty Burn, and Richard and Natalie Townsend.

[2] The Department of Environmental Management previously had adminis-
tered the coastal wetlands restriction program. Formal authority for adminis-
tering the program was transferred to the defendant herein by St. 1986,
c. 565, § 1.

*Raymond G. Dougan*, Assistant Attorney General (*James R. Milkey*, Assistant Attorney General, with him) for the defendant.

*Gary A. Nickerson* for the plaintiffs.

LIACOS, J. The Department of Environmental Quality Engineering (DEQE) appeals from a declaratory judgment that the plaintiffs may level the top of a sand dune in front of their houses. DEQE contends that the plaintiffs' proposed leveling violates a restrictive order (order) adopted by the Commissioner of Environmental Management (commissioner) on March 18, 1980, pursuant to G. L. c. 130, § 105. The trial judge determined that the plaintiffs' proposed actions would be permitted activities under that order because such actions would constitute beach nourishment, as set forth in § 3 G of the order.[3] We affirm. We hold that the judge was warranted, by the evidence, in concluding that the plaintiffs' activities come within the meaning of beach nourishment.

We summarize the facts and the relevant procedural history. The plaintiffs possess five adjacent parcels of land in Sandwich, each situated on the landward side of a large sand dune. The judge found, and it is not contested, that the sand dune is atypical, in that over time it has not eroded but instead has accreted. Since 1951, the plaintiffs periodically have bulldozed the dune in front of their dwellings so as to maintain an elevation of eighteen feet. The sand was deposited on the beach, seaward of the dune. The last maintenance work of this kind was done in 1976.

---

[3] The order restricts various activities on coastal wetlands in the town of Sandwich. Section 3 G allows "activities and uses" which constitute "Beach nourishment" by permitting:

> "Beach nourishment except on salt marsh areas or productive shellfish tidal flats as identified by the Division of Marine Fisheries or the local Shellfish Department; dune nourishment; bank and dune stabilization and coastal engineering structures which are otherwise approved under all applicable municipal, state and federal laws, and only where such structures will have no adverse effects on adjacent property or downcoast areas."

"Beach nourishment" is not defined by the order, nor is the term defined in DEQE regulations. See 302 Code Mass. Regs. § 4:02 (definitions).

The order was adopted on March 18, 1980. In 1983, the plaintiffs applied to the Sandwich conservation commission and received approval to perform maintenance work on the dune. G. L. c. 131, § 40. In early 1984, the DEQE notified the plaintiffs of its intention to prevent future leveling of the dune by enforcing its 1980 order. On May 3, 1984, the plaintiffs commenced this action. Trial was held on January 30, 1985, and a declaratory judgment in favor of the plaintiffs was entered on July 21, 1986. On July 24, 1986, the DEQE obtained an injunction enjoining the plaintiffs from leveling the dune, pending appeal. The DEQE then appealed the judgment. We transferred the case to this court on our own motion.

1. *Preliminary matters*. In his decision, the trial judge viewed the order as a regulation rather than an adjudication, for purposes of judicial review. The judge took this view because the restriction order "purports to apply prospectively to land with similar geographical features in the same manner." We agree that the order should be reviewed under the standards applicable to regulations. See *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Comm'n*, 345 Mass. 228, 233-234 (1962).

The judge also implicitly ruled that the order was a reasonable exercise of DEQE's power under G. L. c. 130, § 105,[4] because

---

[4] General Laws c. 130, § 105 (1986 ed.), as amended through St. 1987, c. 174, § 18, states, in pertinent part, that the commissioner:

"may from time to time, for the purpose of promoting the public safety, health and welfare, and protecting public and private property, wildlife and marine fisheries, adopt, amend, modify or repeal orders regulating, restricting or prohibiting dredging, filling, removing or otherwise altering, or polluting, coastal wetlands. In this section 'coastal wetlands' shall mean any bank, marsh, swamp, meadow, flat or other low land subject to tidal action or coastal storm flowage and such contiguous land as said commissioner reasonably deems necessary to affect by any such order in carrying out the purposes of this section."

This language has not been materially altered at any time relevant to this action. Section 4.02 of 302 Code Mass. Regs. defines "Coastal wetland" as "any bank, marsh, swamp, meadow, flat or other low land subject to tidal action or coastal storm flowage and such contiguous land as the Commissioner deems necessary to include in any Order pursuant to the Act." The order regulates and restricts activities in such areas.

he addressed whether, under the order, the plaintiffs' proposed actions are allowable. The DEQE suggests that the order is intended to preserve sand dunes as protection against storm damage, and the language of the order supports this reading. We need not decide this issue as we shall assume, for purposes of this decision, that the order is a valid regulation.

2. *Beach nourishment.* The order regulates activities and uses affecting "coastal wetlands," including the dune at issue. The order specifically permits certain activities and uses, including beach nourishment. Beach nourishment is not defined. (See note 3, *supra.*) The plaintiffs maintain that any addition of sand to the beach constitutes beach nourishment; but the DEQE points out that the order prohibits "[f]illing, placing or dumping . . . any . . . sand" on the land affected by the order.[5] The DEQE maintains, therefore, the beach nourishment does not include the addition of sand to the beach when no sand is needed.

We have held that an agency's construction of its own regulations is entitled to considerable deference. *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985). See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980). The difficulty of the DEQE in the present case is that no DEQE definition, ruling, or interpretation of what is "beach nourishment," within the meaning of the order, was presented to the court. Instead, the judge was faced with testimony of expert witnesses as to the meaning of that term, as applied to the dune and beach in issue. Our review of the transcript shows that the plaintiffs' expert defined beach nourishment as follows:

> "If pushed toward the beach, any time one takes sand and deposits it in a beach area, that is referred to as beach nourishment, and what that does is put the sand back into the cycle of moving back and forth on the beach, and therefore that sand would be still available and in the system to buffer somebody's property, if not this property.

---

[5] Section 4:02 of 302 Code Mass. Regs. defines "Filling" as "the placing of any material that raises, either temporarily, or permanently, the existing elevation of any coastal wetland."

. . . It is my best professional judgment that what we are faced with and what has been proposed [by the plaintiffs] offers no harm to the environment of any significance."

One of DEQE's expert witnesses did not testify as to the meaning of the term "beach nourishment." The other expert witness, not an employee of DEQE at the time of the trial, stated:

"As I understand the proposal, the actual removal of sediment from the top of the dune is not related to beach nourishment. *The placement of sand from the top of the dune to the beach may be looked at as a general form of beach nourishment,* but under the regulations in Massachusetts that require beach material to be of compatible grain size, I would say that it would not meet those standards. Sand grains comprising that dune are much in size [*sic*] than the coarser sand and cobble material that primarily is a characterization of the beach." (Emphasis supplied.)

In the absence of an agency definition of the term "beach nourishment," the question was left to the trial judge to determine as a matter of resolving the credibility of the experts. Thus, it was not error for the judge to reject the DEQE's proffered construction of the order. There was sufficient evidence for the judge to hold that leveling the dune and depositing the sand on the beach would constitute beach nourishment.[6] His findings to that effect were not "clearly erroneous." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976).

*Judgment affirmed.*

*Injunction dissolved.*

---

[6] We note that, in addition to the evidence presented, the judge took a view of the locus.