416 Mass. 291                                                      291

George H. & Irene L. Walker Home for Children *v.* Franklin.

GEORGE H. AND IRENE L. WALKER HOME FOR CHILDREN,
INC. *vs.* TOWN OF FRANKLIN & another.[1]

Norfolk. September 8, 1993. - October 18, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Education*, Special educational needs. *School and School Committee*, Spe-
cial education. *Administrative Law*, Agency's authority, Regulations.
*Domicil.*

The Department of Education exceeded its authority when it assigned re-
sponsibility for paying part of the cost of special education services pro-
vided to two boys pursuant to G. L. c. 71B to a municipality where the
boys did not reside but where the boys' divorced, noncustodial parent
happened to live. [293-297]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 27, 1991.

The case was heard by *Richard G. Stearns*, J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Mary Joann Reedy* for town of Franklin.

*Gerald M. Moody* for town of Milford.

GREANEY, J. We transferred this case from the Appeals
Court on our own motion to resolve a dispute between the
defendants, the towns of Franklin and Milford, over the pay-
ment of the expenses of special education programs for two
boys. The programs have been provided under G. L. c. 71B,
inserted by St. 1972, c. 766, the State's law providing for
special education programs for children in need of such serv-
ices. A judge of the Superior Court decided, on cross motions
for summary judgment filed by the parties, that the Depart-

---

[1]Town of Milford.

ment of Education (department) had the power to adopt, and properly had applied, a regulation which required Franklin, where the boys' father resided, to pay one-half of the cost of their special education programs. We conclude that the department's decision cannot be reconciled with G. L. c. 71B, §§ 3 and 5, the governing statute. Accordingly, we vacate the judgment entered in the Superior Court and order the entry of a new judgment.

The material facts are not in dispute. John and James Doe (fictitious names) are minors who the school committee of Milford has determined are in need of special education programs in a residential setting. The boys' parents are divorced. Their mother, who was awarded physical custody of them, resides in Milford. Their father, prior to his death in June, 1991, was a resident of Franklin. Although the boys visited their father in Franklin, neither of them ever lived or attended school there.

Initially, Milford paid for John's special education program at the George H. and Irene L. Walker Home for Children, Inc. (Walker School), the plaintiff in this case. When the Milford school committee determined that James also needed a special education program in a residential setting,[2] the town inquired about the father's residence. On discovering that the boys' father lived in Franklin, Milford requested that Franklin assume one-half of the cost[3] of the special education programs provided to John and James. Franklin refused to assume this responsibility without a written determi-

---

[2]The Walker School is in Needham. James has been placed in a residential school in Barre.

[3]General Laws c. 71B, § 5A (1992 ed.), provides: "Whenever a school age child with special needs is determined by a school committee or the bureau of special education appeals to be in need of a special education program at a residential school pursuant to the procedures set forth in the regulations promulgated by the department, the commonwealth and the school committee responsible for providing the special education program shall be jointly obligated to pay the cost of the program." The record in this case does not disclose whether the Commonwealth has assumed part of the cost of educating John and James. No one has suggested that the Commonwealth has a fiscal responsibility that it has not met.

nation of financial responsibility from the department. Milford sought such a determination, and the department responded that, under 603 Code Mass. Regs. § 28, par. 202.1 (c) (1986),[4] Franklin was responsible for one-half of the cost of the special education program of each child. The Franklin school committee voted not to accept responsibility for these costs, and the matter proceeded to litigation.[5] Judgment was entered in favor of the Walker School on its claims against Franklin, and for Milford on its cross claim against Franklin.

At issue is whether the department properly can require that part of the cost of educating a special needs child be paid by a municipality where the child does not reside because one of the child's divorced parents happens to live there. Franklin contends that, in G. L. c. 71B, the Legisla-

---

[4] During the relevant time period, 603 Code Mass. Regs. § 28, par. 202.1 (c) (1986), provided:

"Children who live in a private residential school, hospital, pediatric nursing home, Department of Mental Health school or Department of Public Health hospital school, Department of Youth Services facility, Department of Corrections or County House of Corrections facility are the responsibility of the school committee which has jurisdiction over the city, town or school district where the child's father, mother or guardian lives."

The regulation does not clearly mandate a division of expenses between municipalities in cases where the parents of children in need of special education programs are divorced and live in different municipalities. However, the department indicated that it consistently has interpreted this regulation to require the division of expenses between municipalities for children who are in the situation of John and James. In September, 1991, the department rewrote the regulation. The revised regulation does not apply to this case.

[5] The Walker School brought suit to recover $12,198.75, representing the cost of John's special education program during the 1989-1990 school year which had not been paid by either Franklin or Milford. Milford assumed responsibility for the entire cost of John's education during the 1990-1991 school year to avoid any disruption in the boy's education, reserving the right to seek reimbursement for one-half of the expenses from Franklin. Milford also paid the cost of James's special education program from August 21, 1989, to June 9, 1991, the date of the father's death. In a cross claim, Milford sought to hold Franklin responsible for the $12,198.75 owed to the Walker School, and to recover $61,313.10, representing one-half of Milford's costs for the boys' education prior to their father's death.

ture only delegated to the department the power to define by regulation programs for students with special needs. Franklin reasons that the department's regulatory power does not extend to the assignment of fiscal responsibility for the provision of special education programs, except where that power has been conferred explicitly. It is also argued that the department's division of fiscal responsibility between municipalities conflicts with statutory provisions that allocate fiscal responsibility for a special education program based on the residence of the child participating in the program. We reject the broad contention that the department's power does not encompass the adoption of regulations which may have the practical effect of assigning fiscal responsibility for the provision of special education programs. However, we conclude that a regulation like par. 202.1 (c), which permits the assignment of fiscal responsibility to a municipality where a child in a special education program clearly does not reside, conflicts with the governing provisions of G. L. c. 71B.[6]

General Laws c. 71B "requires every city, town or school district: (1) to identify the school age children residing in that district who have special needs; (2) to diagnose and evaluate the educational needs of such children; (3) to propose a special education program to meet those needs; and (4) to provide or to arrange for the provision of such special education programs." *Northbridge* v. *Natick*, 394 Mass. 70, 72 (1985). The statute assigns to the department, in conjunction with the departments of mental health, mental retardation, public health and social services, the responsibility to adopt regulations regarding services and programs for children with special education needs. See G. L. c. 71B, §§ 2, 3, 10, and 12 (1992 ed.).

Section 3 of G. L. c. 71B provides, in relevant part: "In accordance with the regulations, guidelines and directives of the department issued jointly with the departments of mental health, mental retardation and public health and with the as-

---

[6]Because we resolve the case on this basis, we do not consider whether the department's application of par. 202.1 (c) is arbitrary or capricious.

sistance of the department, the school committee of every city, town or school district shall identify the school age children *residing therein* who have special needs . . . [and] provide or arrange for the provision of [a] special education program [for such children]" (emphasis added). Section 5 of G. L. c. 71B assigns to the school committee which "provides or arranges for the provision of special education [to a child] pursuant to the provisions of section three" the responsibility to "pay for such special education personnel, materials and equipment, tuition, room and board, transportation, rent and consultant services as are necessary for the provision of special education."

In *Boston* v. *Board of Educ.*, 392 Mass. 788, 792-793 (1984), §§ 3 and 5 were construed as clearly imposing the burden of paying for a special education program on the municipality (or school district) where the child needing the program *resides*.[7] It is not contended that John and James ever "resided," within the meaning of G. L. c. 71B, in Franklin. " 'A person's domicil is usually the place where he has his home.' [Restatement (Second) of Conflict of Laws § 11 comment a (1971).] 'Home is the place where a person dwells and which is the center of his domestic, social and civil life.' *Id.* at § 12." *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 161-162 (1978). *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 576 (1974). A person can have only one domicil. *Dane* v. *Registrars of Voters of Concord, supra* at 161. The domicil, or residence, of a minor child generally is the same as the domicil of the parent who has physical custody of the child. *Gil* v. *Servizio*, 375 Mass. 186, 189 (1978). See *Teel* v. *Hamilton-Wenham Re-*

---

[7]The language of G. L. c. 71B, § 5, was modified by St. 1981, c. 351, § 123, and by St. 1982, c. 314. However, the modifications in language, which were not applicable in *Boston* v. *Board of Educ.*, 392 Mass. 788 (1984), because they had not yet taken effect, only limited the responsibility of school committees to pay for certain health care goods and services, and did not alter the statutory language assigning responsibility for meeting the requirements of G. L. c. 71B in accordance with a child's residence.

*gional Sch. Dist.*, 13 Mass. App. Ct. 345, 348-349 (1982) (determining a father's domicil for purpose of resolving a dispute over where children could attend public school). The mother of John and James, who has physical custody of the boys, resides in Milford. The boys also are residents of Milford.[8]

The Appeals Court has appropriately observed that the phrase "residing therein" in G. L. c. 71B, § 3, "is not so obviously self-defining when considerations such as split families, guardianships, children living with foster parents, relatives or friends, and institutionalized children enter the picture." *Board of Educ.* v. *School Comm. of Amesbury*, 16 Mass. App. Ct. 508, 512 (1983). Under the terms of § 3, the department has been given the authority to adopt regulations addressed to resolving the issue of residence in situations in which a child's legal residence may be in some doubt. See *Massachusetts Hosp. Ass'n* v. *Department of Medical Sec.*, 412 Mass. 340, 342 (1992); *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979). Because a school committee's fiscal responsibility for providing special education programs follows from the fact of a child's residence in a municipality under that school committee's jurisdiction, proper regulations addressing issues of residency also may have the practical effect of assigning fiscal responsibility.[9] However, under G. L. c. 71B, the department's au-

---

[8]We reject Milford's suggestion that John and James "reside" in Needham and Barre, the municipalities in which their residential special education schools are located. A municipality is not relieved of its responsibility for a special needs student because that student participates in a special education program in a residential setting elsewhere. As long as the child's parent lives in the municipality that evaluated and referred the child to the residential school for a special education program, the child's residence or domicil remains unchanged.

[9]For this reason, we reject Franklin's contention that the department lacks the authority to adopt regulations assigning fiscal responsibility for the provision of special education programs. The department's regulatory power extends, at least in certain respects, to the promulgation of regulations addressing fiscal responsibility for the provision of special education programs. See *Northbridge* v. *Natick, supra* (interpreting and applying 603 Code Mass. Regs. § 28, par. 202.1 [d]); *Board of Educ.* v. *School*

416 Mass. 291    297

George H. & Irene L. Walker Home for Children *v.* Franklin.

thority with respect to the assignment of fiscal responsibility is limited to the question of determining where a child resides. *Board of Educ.* v. *School Comm. of Amesbury, supra* at 516.

Paragraph 202.1 (c), as applied by the department to the facts of this case, is not based on a determination of the residence of John and James. Consequently, the department's decision is inconsistent with the provisions of §§ 3 and 5 of G. L. c. 71B. We conclude that the department exceeded its authority when it assigned responsibility to Franklin for the costs of the special education of two boys who do not reside there. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Council*, 411 Mass. 183, 194 (1991). Milford, where the boys do reside, has the responsibility for satisfying the requirements of G. L. c. 71B.

The judgment is vacated. The case is remanded to Superior Court for entry of an appropriate judgment for the Walker School against Milford only, and in favor of Franklin against Milford on Milford's cross claim.

*So ordered.*

---

*Comm. of Amesbury*, 16 Mass. App. Ct. 508, 512 (1983) (disapproving department's "practice" of assigning responsibility for special education costs to last town in Commonwealth in which child's parents resided, but suggesting that department could act through "appropriately adopted regulation, guideline or directive"). See also *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 485-486, 491-496 (1978) (approving two "policy statements" of the department concerning a school committee's financial responsibility to reimburse parents for special educational programs found necessary to meet a child's needs).