NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12369

MICHAEL CAREY & others[1] vs. COMMISSIONER OF CORRECTION.


Suffolk.     January 8, 2018. - April 19, 2018.

Present:  Gants, C.J., Lowy, Budd, Cypher, & Kafker, JJ.


Commissioner of Correction.  Regulation.  Administrative Law,
     Agency's interpretation of regulation, Administrative
     Procedure Act.  State Administrative Procedure Act.



     Civil action commenced in the Superior Court Department on
January 2, 2014.

     The case was heard by Joseph F. Leighton, Jr., J., on
motions for summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Leonard M. Singer for the plaintiffs.
     William D. Saltzman for the defendant.


_____

     [1] Gatewood West and Brenda Frazier.  David Nathanson, Andrew
W. Cowan, and Adriana Contartese, who were plaintiffs in the
action in the Superior Court, have not participated in this
appeal.  See note 3, infra.

BUDD, J.  In 2013, the Department of Correction (department) announced that visitors to correctional facilities would be subject to search by drug-detecting dogs.  The plaintiffs, who are visitors to correctional facilities who are not attorneys, allege that this canine search policy (policy) violated the department's existing regulations and that the department failed to follow requirements of the Administrative Procedure Act (APA), G. L. c. 30A, §§ 1 et seq., in implementing this new policy.  The defendant Commissioner of Correction (commissioner) contends that the policy is consistent with the department's existing regulations and is exempt from the APA.

We conclude that although the policy is not inconsistent with the department's existing regulations, it is not exempt from the APA.  Given the policy's substantial impact on institutional security, however, entry of judgment shall be stayed for 180 days to permit the department to take action consistent with this opinion, during which time the department may continue to enforce the policy.

1.  Background.  In early 2013, the department announced that it would begin subjecting prison visitors to search by drug-detecting dogs.[2]  The plaintiffs commenced this action to

---

[2] In early 2013, the Department of Correction (department) announced its intention to implement canine searches via a video recording that played in correctional facility lobbies.  The department posted a similar video on the Internet Web site

prevent the department from implementing the new policy.  The plaintiffs sought a judgment declaring that the policy was not authorized by the department's existing regulations, as well as a preliminary injunction to enjoin the department from implementing the policy without its being promulgated pursuant to the APA.[3]  A judge in the Superior Court denied the plaintiffs' motion for a preliminary injunction, concluding that the wording of the regulation governing visits by members of the general public was broad enough to allow for canine searches.

---

YouTube.  In March, 2013, the department posted a fact sheet regarding the new policy on its own Web site, stating in part: "In response to an increase in drug and other contraband-related incidents involving visitors, the [department] will soon employ the use of dogs, trained to detect the presence of drugs, to address this problem."  The department also distributed and posted documents regarding the policy, stating in pertinent part:  "To further its ability to detect and prevent [drug smuggling] activity, the [department] will implement the use of non-aggressive, highly trained narcotic detection dogs in certain prison facilities for visitor and staff searches beginning the first full week in November."

[3] The complaint alleged a violation of the regulation governing attorney visits, see 103 Code Mass. Regs. § 486.07(4) (2015), and sought a judgment declaring that the policy was not authorized.  The judge in the Superior Court who granted summary judgment permanently enjoined the department from enforcing the policy with regard to attorney visitors, on the ground that the regulation governing attorney visits did not allow for additional search procedures.  The Commissioner of Correction (commissioner) did not appeal from that portion of the judgment. Those plaintiffs who were attorneys have not participated in this appeal.

The policy was thereafter implemented. The dogs performing the searches are not aggressive and remain leashed at all times.[4] They "alert" to the presence of a banned substance by sitting; they do not snarl, lunge, or bite. There are alternative procedures for those visitors who are allergic to, or afraid of, dogs.

A second Superior Court judge granted summary judgment for the commissioner, entering a judgment declaring that the commissioner had the authority to establish the policy without having to comply with the procedural requirements of the APA because the policy is "sufficiently similar to the searches specifically enumerated in the regulatory language." The instant appeal followed. We transferred the case to this court on our own motion.

2. Discussion. Because this matter comes before us following a grant of summary judgment, we look to the summary judgment record and review de novo. Miller v. Cotter, 448 Mass. 671, 676 (2007).

a. The viability of the policy. The plaintiffs argue that the policy is prohibited by the department's existing regulations. We disagree.

---

[4] As of January, 2014, there were four department dogs, all golden or Labrador retrievers: Sophie, Bailey, Greta, and Rudy. Each dog has a handler, one of whom serves as canine commander and oversees the dogs' training program.

By statute, the commissioner is required to "make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding . . . visiting privileges."  G. L. c. 124, § 1 (q).  The governing regulation states:

> "Each superintendent shall establish a search procedure that is effective in preventing the smuggling of articles into the visiting area of the institution.  The search procedure may include as a prerequisite to admission that visitors successfully pass through a metal detector and/or scanner, and/or a personal search, and that any articles they are carrying be thoroughly searched. . . ."

103 Code Mass. Regs. § 483.14(2) (2004).

A plaintiff challenging an agency interpretation has a "formidable burden."  Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010), quoting Northbridge v. Natick, 394 Mass. 70, 74 (1985).  Unless an agency's interpretation of its own regulation is "arbitrary, unreasonable, or inconsistent with the plain terms of the rule," such interpretation is entitled to deference.  Manor v. Superintendent, Mass. Correctional Inst., Cedar Junction, 416 Mass. 820, 824 (1994), quoting Finkelstein v. Board of Registration in Optometry, 370 Mass. 476, 478 (1976).

Here, the plaintiffs allege not that the policy is arbitrary or unreasonable, but that it is inconsistent with the existing regulation because, they claim, the policy only permits

searches that are similar to metal detectors and personal searches.  We see nothing in the language of the general regulation that precludes a canine search.  On the contrary, by using "shall," the regulation mandates that the search procedure be effective in preventing smuggling of contraband into correctional facilities.[5]  See Galenski v. Erving, 471 Mass. 305, 309 (2015).  Further, as to the specifics of any such procedure, the regulation uses broad, permissive language (i.e., "search procedure may include" [emphasis added]).[6]  103 Code Mass. Regs.

---

[5] The plaintiffs argue that the policy is also inconsistent with the regulation because the commissioner instituted it, whereas the regulation states that the "superintendent [of each correctional facility] shall establish a search procedure."  103 Code Mass. Regs. § 483.14(2) (2004).  This argument is unpersuasive.  By statute the ultimate authority over the operation of all correctional facilities lies with the commissioner.  G. L. c. 124, § 1 (q).

[6] We disagree with the plaintiffs' contention that the doctrine of ejusdem generis limits the department to searches similar to those enumerated.  Ejusdem generis is a canon of statutory construction that applies to lists "[w]here general words follow specific words in a statutory enumeration" (citation omitted).  Banushi v. Dorfman, 438 Mass. 242, 244 (2002).  It limits the "general terms which follow specific ones to matters similar to those specified."  Commonwealth v. Gallant, 453 Mass. 535, 542 (2009), quoting Powers v. Freetown-Lakeville Regional Sch. Dist. Comm., 392 Mass. 656, 660 n.8 (1984).  Ejusdem generis does not apply here because rather than beginning with specific terms, this list begins with a general term, "a search procedure that is effective," then provides nonexclusive examples.  103 Code Mass. Regs. § 483.14(2).  Cf. United States v. Turkette, 452 U.S. 576, 581-582 (1981) (declining to apply ejusdem generis where statute did not conform to structure of list of specific terms preceding disputed general term); Trustees of Andover Theological Seminary v. Visitors of the Theological Inst. in Phillips Academy in

§ 483.14(2).  See <u>Wiedmann</u> v. <u>Bradford Group, Inc</u>., 444 Mass. 698, 709-710 (2005) (use of "may" is permissive, not mandatory). Notwithstanding the possibility of a false positive,[7] there is no dispute that canine searches are effective in detecting contraband that metal detectors and personal searches may not detect.  Giving due deference to the department's interpretation of its regulation, we conclude that the existing regulation permits canine searches.

b.  <u>The APA</u>.  Apart from the question whether the canine search policy is permissible under the department's current regulations is the question whether the department was required to follow the procedures set forth in the APA for promulgating or amending regulations.  The APA details procedures that State agencies, including the department, must follow when adopting new regulations (as defined in the statute).  Its purpose is to "establish a set of minimum standards of fair procedure below which no agency should be allowed to fall" and to create

---

<u>Andover</u>, 253 Mass. 256, 270 (1925) (declining to apply ejusdem generis where general words preceded disputed list).

[7] The plaintiffs direct our attention to case law recognizing that dogs sometimes "alert falsely" either to remnants of drugs or in order to please their handlers.  See <u>Commonwealth</u> v. <u>Ramos</u>, 72 Mass. App. Ct. 773, 776 (2008).  The plaintiffs do not allege, however, that canine searches are ineffective.

uniformity in agency proceedings.[8]  Curran & Sacks, The
Massachusetts Administrative Procedure Act, 37 B.U. L. Rev. 70,
76-77 (1957).  See Reid v. Acting Comm'r of Dep't of Community
Affairs, 362 Mass. 136, 144 (1972); Palmer v. Rent Control Bd.
of Brookline, 7 Mass. App. Ct. 110, 115 (1979).

Among other requirements, prior to promulgating a
regulation (as defined by the APA), a State agency must "give
notice and afford interested persons an opportunity to present
data, views, or arguments."  G. L. c. 30A, § 3.  The notice and
comment period provides an "opportunity for 'input' and debate
by the persons affected, and deliberate resolution of issues."
Massachusetts Gen. Hosp. v. Rate Setting Comm'n, 371 Mass. 705,
707 (1977).

The commissioner contends that the policy is not subject to
the APA because it does not fall within the APA's definition of
a regulation.  Although we accord substantial deference to an
agency's interpretation of its own regulations, Northbridge, 394
Mass. at 74, we do not defer to its interpretation of the APA.

Under the APA, a regulation "includes the whole or any part
of every rule, regulation, standard or other requirement of
general application and future effect, including the amendment

---

[8] The purpose of the Massachusetts Administrative Procedure
Act (APA) is similar to that of the comparable Federal statute.
Milligan v. Board of Registration in Pharmacy, 348 Mass. 491,
500 (1965).

or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it."  G. L. c. 30A, § 1 (5).  Given the purpose of the APA, we interpret its definition of regulation broadly.  See Commonwealth v. Trumble, 396 Mass. 81, 88 (1985), citing Curran & Sacks, supra at 77. Nevertheless, the definition excludes "regulations concerning only the internal management . . . of the . . . agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities."  G. L. c. 30A, § 1 (5) (b).  Upon review, we conclude that the policy is not exempt from APA requirements as it is not one that concerns internal management alone, and, at a minimum, it substantially affects the procedures available to visitors to correctional facilities.

Simply put, the introduction of the new policy substantially affected the procedures available to the public because, prior to the implementation of the policy, visitors to correctional facilities were not subject to dog sniff searches, but now they are.  This change could have a potentially significant impact on the visiting public's experience, including increased wait times, increased anxiety due to a fear of dogs or of false positives, and concerns in connection with allergies.  Compare Trumble, 396 Mass. at 89 (policy not subject to APA where it concerned how State police should conduct

roadblocks already taking place). The fact that the department publicized the new policy by way of a coordinated multimedia campaign well before the policy's planned implementation date is a strong indicator that the department was well aware that implementing canine searches would be of substantial concern to those affected.[9]

Given the department's efforts to publicize the policy, the commissioner cannot credibly argue that the policy concerns only internal management issues. Rules or regulations that concern "only the internal management" of an agency are those that concern the organizational structure of that agency, or those that are directed toward agency employees, instructing them on how they should perform their duties. See Trumble, 396 Mass. at 89 (State police document detailing how State troopers should conduct roadblocks considered to be for internal management purposes and not subject to APA). Clearly the department intended to, and did, broadcast information about the new policy to the public. Indeed, it was the publication of the

---

[9] In addition to the video recording that the department showed in correctional facility lobbies and uploaded to the Internet, the fact sheet that the department featured on its Web site, and the notice that the department posted in its facilities announcing the policy to the public, the commissioner wrote a letter about the policy to governmental officials and distributed written explanations to department staff and inmates.

department's planned implementation of the policy that prompted the instant action.

The commissioner argues additionally that the department's policy is "intend[ed] to fill in the details or clear up an ambiguity" of the regulation governing searches of visitors, rather than to initiate a material change, and that thus the policy is not subject to the APA. Arthurs v. Board of Registration in Med., 383 Mass. 299, 313 n.26 (1981), quoting Massachusetts Gen. Hosp., 371 Mass. at 707 ("Agencies 'intending to fill in the details or clear up an ambiguity of an established policy' may issue interpretation or informational pronouncements without going through the procedures required for the promulgation of a regulation"). We are not persuaded. An agency's interpretation of its own regulations may trigger the APA if that interpretation leads to a rule or policy that meets the APA's definition of a regulation. See, e.g., Electronic Privacy Info. Ctr. v. United States Dep't of Homeland Sec., 653 F.3d 1, 7 (D.C. Cir. 2011) ("the purpose of the APA would be disserved if an agency with a broad statutory command . . . could avoid notice-and-comment rulemaking simply by . . . invoking its power to interpret that statute and regulation in

binding the public to a strict and specific set of obligations").[10]

For the foregoing reasons we conclude that, at a minimum, the policy "substantially affect[s] . . . the procedures available to the public or that portion of the public affected by the agency's activities" such that the policy is subject to the APA.[11]  G. L. c. 30A, § 1 (5) (b).  See Electronic Privacy Info. Ctr., 653 F.3d at 6 (use of advanced imaging technology rather than magnetometers at airports was subject to Federal APA as it "substantively affect[ed] the public to a degree sufficient to implicate the policy interests animating notice-and-comment rulemaking").

3.  Conclusion.  The case is remanded to the Superior Court for entry of a judgment declaring that the department was required to, but did not, meet the requirements of the APA when it adopted this regulation, but that such a regulation, if

---

[10] The Federal APA has a similar definition of regulation and similar exceptions thereto.  See 5 U.S.C. §§ 551(4), 553(b).  The Federal jurisprudence interpreting these provisions is similar, but not identical, to our jurisprudence.  Compare Massachusetts Gen. Hosp. v. Rate Setting Comm'n, 371 Mass. 705, 711-712 (1977), and Commonwealth v. Trumble, 396 Mass. 81, 88-90 (1985), with Electronic Privacy Info. Ctr. v. United States Dep't of Homeland Sec., 653 F.3d 1, 5-7 (D.C. Cir. 2011).

[11] Because we conclude that the policy substantially affects the procedures available to the visiting public, we need not reach the question whether it also substantially affects the rights of the visiting public.

properly adopted in conformance with the APA, would not conflict with existing department regulations.  Entry of the judgment shall be stayed for 180 days to permit the department to take such action as it may deem appropriate in light of this opinion, including, if it wishes, adopting the regulation anew in conformance with the APA.  In light of the security concerns and risks involved, the department may continue to enforce the regulation in the interim.  See Electronic Privacy Info. Ctr., 653 F.3d at 11.

So ordered.