TEN LOCAL CITIZEN GROUP & another[1] *vs.* NEW ENGLAND
WIND, LLC, & another.[2]

Suffolk. March 1, 2010. - July 6, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Wetlands Protection Act. Department of Environmental Protection. Administrative Law,* Agency's interpretation of regulation, Judicial review, Substantial evidence.

A decision of the acting commissioner (commissioner) of the Department of Environmental Protection (department) (i.e., that a developer's proposal to bridge intermittent inland streams by installing open bottom culverts, as part of a larger project to build gravel access roads, complied with the Wetlands Protection Act, G. L. c. 131, § 40 [Act]) was supported by substantial evidence, was not arbitrary or capricious, and was not otherwise based on error of law, where the commissioner's interpretation of 310 Code Mass. Regs. § 10.54(4)(a), limiting its applicability to work physically performed on inland stream banks, was not unreasonable and was entitled to deference; where substantial evidence in the record supported the commissioner's conclusion that the work at issue would be performed on the buffer zones of the streams rather than their banks, and the commissioner's conclusion did not rest on an administrative magistrate's credibility findings; and where the commissioner properly relied on the conditions set forth in a superseding order issued by the department in determining that the interests of the Act were protected. [228-232]

CIVIL ACTION commenced in the Superior Court Department on July 20, 2007.

The case was heard by *Frank M. Gaziano,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*John C. Bartenstein* (*Robert O. Lucido, II,* with him) for the plaintiffs.

*William L. Pardee,* Assistant Attorney General, for Department of Environmental Protection.

*Gregor I. McGregor* (*Nathaniel Stevens* with him) for New England Wind, LLC.

---

[1]Ten Person Environmental Group, which was allowed to intervene by the administrative law judge.

[2]Department of Environmental Protection.

*James B. Art*, for town of Florida & another, amici curiae, submitted a brief.

*Christopher B. Myhrum*, for Association of Massachusetts Wetland Scientists, amicus curiae, submitted a brief.

IRELAND, J. The plaintiffs brought an action in the Superior Court pursuant to G. L. c. 30A, § 14, seeking review of a final decision of the acting commissioner (commissioner) of the Department of Environmental Protection (department) that a project proposed by the defendant New England Wind, LLC (developer), complied with the Wetlands Protection Act (act), G. L. c. 131, § 40. On cross motions for judgment on the pleadings, the judge denied the plaintiffs' motion and granted the defendants' motions. He also denied the plaintiffs' motions for a stay and preliminary injunction, and for leave to present additional evidence. The plaintiffs appealed and we granted the developer's application for direct appellate review. The essence of the plaintiffs' argument is that the commissioner erred in interpreting and applying relevant wetlands regulations, and improperly rejected subsidiary findings of an administrative magistrate (magistrate). Because we conclude that the plaintiffs have failed to demonstrate that the decision by the commissioner was an error of law, arbitrary or capricious, or unsupported by substantial evidence, we affirm the amended judgment of the Superior Court judge granting the defendants' cross motions for judgment on the pleadings and denying the plaintiffs' motions.

*Background and procedure.* In 2003, the developer[3] proposed a project to build two gravel access roads that would originate in the town of Florida (town), whose purpose is to allow for the construction and maintenance of twenty wind turbines on Bakke Mountain and Crum Hill.[4] The access road to Bakke Mountain would cross twelve "intermittent" streams (streams).[5] A traditional tubular culvert would bridge no more than two of the

---

[3]The original developer was enXco, Inc. New England Wind, LLC, is the present developer. We make no distinction between the two in our discussion of the issues.

[4]Bakke Mountain and Crum Hill are located in the towns of Florida and Monroe, respectively.

[5]An "intermittent stream" is defined as "a body of running water . . . which moves in a definite channel in the ground . . . which does not flow throughout the year." 310 Code Mass. Regs. § 10.04 (2002).

streams; the remaining streams would be bridged using open bottom culverts. A tubular culvert eliminates a stream bank and replaces it with the walls of the culvert. An open bottom culvert typically is an aluminum arch, shaped like an inverted "U." Important for our analysis is the fact that the open bottom culverts here would not physically touch the bank itself because the footings would be located from two to eight feet from the banks of the stream.

Because the project involves work in a wetlands area, it falls under the purview of the act, G. L. c. 131, § 40, as well as the wetlands regulations promulgated by the department, 310 Code Mass. Regs. §§ 10.00 (2002). The act does not prohibit development in wetlands areas; it creates a procedure requiring the department to condition activities in certain areas so as to protect the act's statutory mandate.[6] *Citizens for Responsible Envtl. Mgt.* v. *Attleboro Mall, Inc.*, 400 Mass. 658, 669, 670 (1987). The wetlands regulations identify and cover certain "resource areas," including inland stream banks such as the ones at issue here.[7] 310 Code Mass. Regs. §§ 10.02(1)(a), 10.04, 10.21-10.37. They also cover what is referred to as a "[b]uffer [z]one," which is defined as "that area of land extending 100 feet horizontally outward from the boundary of [a resource area]." 310 Code Mass. Regs. § 10.04. Anyone proposing certain activities in these areas must file a notice of intent,[8] and the level of scrutiny the project receives depends on the area in which the activity will occur. 310 Code Mass. Regs. § 10.02(2)(a), (b). For activity in a resource area, the applicant must comply with

---

[6]The act identifies the interests to be protected as public or private water supplies, groundwater supply, flood control, storm damage prevention, prevention of pollution, and protection of fisheries and wildlife habitat. G. L. c. 131, § 40, eighteenth par. See 310 Code Mass. Regs. § 10.54(1), (3) (2002).

[7]A "[b]ank" is defined as "the portion of the land surface which normally abuts and confines a water body. It occurs between a water body and a vegetated bordering wetland and adjacent flood plain, or, in the absence of these, it occurs between a water body and an upland." 310 Code Mass. Regs. § 10.54(2)(a) (2002).

[8]A notice of intent must be filed by any person proposing "activity" within the resource area that will "remove, fill, dredge or alter that area" and by any person whose activity in the buffer zone, in the judgment of the permit issuing authority, will alter a resource area. 310 Code Mass. Regs. § 10.02(2)(a), (b) (2002).

certain "performance standards" for that particular resource (here inland banks).[9] 310 Code Mass. Regs. § 10.03(1)(a)(2). For activity in a buffer zone that the issuing authority determines will "alter" a resource area, the applicant has a lighter burden and need demonstrate only that the work "will contribute to the protection of the interests identified in [the act]" as determined by the issuing authority. 310 Code Mass. Regs. §§ 10.02(2)(b), 10.03(1)(a)(3).

Buffer zones are not mentioned in the act, but were added to the department's regulations in 1983, "not to expand jurisdiction automatically beyond the boundaries of bordering vegetative wetlands, but to provide a mechanism by which local conservation commissions can be notified of projects located outside these boundaries but sufficiently close thereto to pose a potential environmental threat." Preface to the Wetlands Regulations — 1983 Regulatory Revisions, 310 Code Mass. Regs. §§ 10.00 (1997).

It is important to note here that, while this project was under review, "the [d]epartment engaged in policy and regulatory development that led to the formal adoption of" narrative standards for work in the buffer zones of resource areas and guidelines for stream crossings and wildlife habitat protection.[10] The stream crossing standard treats open bottom culverts as equivalent to bridges, and the wildlife habitat protection guidelines adopted the stream crossing standards as the best practice.

Here, the developer filed the requisite notice of intent to construct the roads with the town's conservation commission, which issued its order of conditions, approving the project. See G. L. c. 131, § 40, second and eighteenth pars.; 310 Code Mass. Regs. § 10.05(4)(a)-(b). The plaintiffs appealed to the department for a superseding order of conditions (superseding order).

---

[9]The performance standards for inland banks are that "any proposed work on a [b]ank shall not impair" the physical stability of the bank or its capacity to provide wildlife habitat functions, the water carrying capability of the existing channel, and the quality of ground and surface water. 310 Code Mass. Regs. § 10.54(4)(a) (2002).

[10]These policy and regulatory developments are, respectively, 310 Code Mass. Regs. § 10.53(1) (2005); Massachusetts River and Stream Crossing Standards (2006); and Massachusetts Wildlife Habitat Protection Guidance for Inland Wetlands (2006).

See G. L. c. 131, § 40, nineteenth par.; 310 Code Mass. Regs. § 10.05(7)(b)-(i).

The department issued a superseding order but determined that, subject to certain specific conditions, the stream crossings would not adversely affect the resource area (where the open bottom culverts were to be used) or would meet requisite performance standards (where tubular culverts were to be used). The requisite conditions included that the developer retain a compliance monitor to oversee work at the site and a wetlands scientist to oversee replication of bordering vegetation. It also must submit reports concerning the functioning of the storm water management and the ecological status of all resource areas. Additional permission must be received for any work not shown on the developer's plan. Any "activity" on the bank, including any bank "disturbance," is prohibited.

The plaintiffs appealed from the superseding order. The department referred the matter to the division of administrative law appeals for a full adjudicatory hearing and recommended findings and disposition. 310 Code Mass. Regs. § 10.05(7)(j). The plaintiffs bore the burden of producing "at least some credible evidence from a competent source in support of the position taken" that the proposed project violated the act. 310 Code Mass. Regs. § 10.03(2).

The parties submitted approximately 170 exhibits, "thousands of photographs," and prefiled testimony from their respective witnesses, who were cross-examined at the hearing. In a seventy-eight page recommended final decision, the magistrate concluded that the developer had not properly delineated the boundaries of the banks of eleven streams. She applied the performance standard for inland banks to the proposed project and concluded that the work would impair the stability of the bank on ten streams, and that a requisite wildlife habitat evaluation was not performed. The magistrate agreed with the plaintiffs that the open bottom culverts would alter the banks by blocking out the sun and killing plants whose roots are in the bank. In doing so, she dismissed the terms of the superseding order that required the developer to leave the banks undisturbed when it installed the open bottom culverts as "laudable provisions [that] cannot prevent the inevitable [destruction of plants and trees]," and stated that the department's argument that a compliance monitor

and a prohibition against activity are sufficient to protect the stream banks was "without merit."[11]

The commissioner issued a thirty-one page final decision. It is clear that she carefully considered all the evidence presented at the hearing; however, she rejected the magistrate's conclusions. Because the plaintiffs challenged the department's policy, the commissioner stated that, although her decision was firmly rooted in the regulations, she would review the project within the context of the stream crossing standard that she stated was helpful to her analysis.[12] She also noted that a witness for the department, who oversaw the project's superseding order, testified that the department required the most stringent conditions it had ever required for a project.

The commissioner concluded that the magistrate erred in applying the bank performance standards to the open bottom culverts where the actual installation of the footings would take place in the buffer zone. She stated that the excavation of trenches and installation of the footings would not cause a material impact to the bank. She pointed out that, even if she were to agree with the plaintiffs that the project threatened the banks, the solution would not be to ban the open bottom culverts but to add more conditions on their installation, including preventive bank restoration. She explained that under the department's policies, open bottom culverts usually satisfied the requirement that projects protect the interests of the act and that the developer had consulted with department staff in preparing their proposed project. In approving the project, the commissioner added other conditions to the superseding order, including that the developer specifically report on the condition of the bank consistent with the stream crossing standards and undertake any corrective action ordered by the department.[13]

The plaintiffs appealed, and in a well-reasoned memorandum

[11]The magistrate did not rule in favor of the plaintiffs on all their claims, and the commissioner adopted her recommendations on some of the claims. The plaintiffs have not appealed from those issues.

[12]She noted that the department had been using these standards unofficially since 1995.

[13]In her final decision, the commissioner stated that if certain specifications were met, she would allow one of the streams to be bridged by an open bottom culvert.

of decision and order, a Superior Court judge affirmed the decision of the commissioner, concluding that the commissioner's interpretation of the regulations was reasonable and her decision was supported by substantial evidence.

*Discussion.* Under G. L. c. 30A, § 14 (7), we review an agency's decision to determine whether it was not supported by substantial evidence, was arbitrary or capricious, or was otherwise based on an error of law. *Friends & Fishers of the Edgartown Great Pond, Inc.* v. *Department of Envtl. Protection*, 446 Mass. 830, 836 (2006). This standard is highly deferential to an agency and requires "according 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' " *Id.*, quoting *Hotchkiss* v. *State Racing Comm'n*, 45 Mass. App. Ct. 684, 695-696 (1998). "We ordinarily accord an agency's interpretation of its own regulation[s] considerable deference." *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 550 (1991). The party challenging an agency's interpretation of its own rules has a "formidable burden" of showing that the interpretation is not rational. *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985), quoting *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979).

Because much of the plaintiffs' argument relies on the magistrate's recommended final decision, and they ask, inter alia, that we "reverse[]" the commissioner's decision and "adopt[]" the magistrate's recommended final decision, we note that the recommendation was not the final decision of the department. 310 Code Mass. Regs. § 1.01(14)(b) (2004). Here, the commissioner's interpretation of regulations is conclusive at the agency level, and is the only interpretation that is entitled to deference by a reviewing court. See *Boston Police Superior Officers Fed'n* v. *Boston*, 414 Mass. 458, 462 (1993).

The plaintiffs first claim that the commissioner misinterpreted 310 Code Mass. Regs. § 10.54(4)(a) when she concluded that the performance standards for work "on" a bank do not apply to the project's open bottom culverts because the actual work would be done in the buffer zone. The plaintiffs concede that if the commissioner correctly concluded that the open bottom

culvert work will not be performed on the bank, they have no viable appeal concerning the open bottom culverts.

"We interpret a regulation in the same manner as a statute . . . ." *Warcewicz* v. *Department of Envtl. Protection, supra,* citing *Hellman* v. *Board of Registration in Med.,* 404 Mass. 800, 803 (1989). We "accord the words of a regulation their usual and ordinary meaning." *Warcewicz* v. *Department of Envtl. Protection, supra.* Here, 310 Code Mass. Regs. § 10.54(4)(a) states, in pertinent part, that "any proposed work *on* a [b]ank shall not impair [certain characteristics of the bank or stream]" (emphasis added). See note 9, *supra.* In determining that the proposed open bottom culverts did not involve work *on* the bank within the meaning of the regulation, the commissioner focused on the location of the work that would result in the installation of the culvert's footings, which undisputedly is in the buffer zone. As discussed, it also is undisputed that the open bottom culverts would not touch the bank physically.

The plaintiffs refer to the regulation's words "any proposed work on a [b]ank" as "a snippet of lead-in language" to argue that the commissioner gave the regulation the narrowest possible reading, thereby restricting the scope of the resource area subject to regulation. The preposition "on" is not defined in the statute, but Webster's Third New Int'l Dictionary 1574 (1993) defines it as "a function word to indicate position over and in contact with that which supports it from beneath." See generally *Allen* v. *Boston Redevelopment Auth.,* 450 Mass. 242, 256 (2007) (where statutory term is not defined, "it must be understood in accordance with its generally accepted plain meaning"). We conclude that the commissioner's interpretation of the preposition "on," limiting the applicability of 310 Code Mass. Regs. § 10.54(4)(a) to work performed physically on the bank, is not unreasonable and is entitled to deference. See *North-bridge* v. *Natick, supra.* See generally *Canton* v. *Commissioner of the Mass. Highway Dep't,* 455 Mass. 783, 789 (2010), quoting *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983) (court does not enlarge language of regulation unless "its object and plain meaning require it").

The plaintiffs further argue that the commissioner's interpretation of the preposition "on" has the effect of allowing "activ-

ity" that takes place *above* the surface of a bank, such as the open bottom culverts here, to be unregulated because, they argue, it is not in either the resource area or the buffer zone. The department points out that the regulation is limited to *land* under water bodies and wetlands; it does not purport to extend to the air above. See 310 Code Mass. Regs. § 10.02(1) (areas subject to protection include "[a]ny bank" bordering on "any stream" and "[l]and under any of the water bodies listed . . . [or] subject to flooding"). Indeed, a bank is defined as "the portion of the *land surface* which normally abuts and confines a water body." 310 Code Mass. Regs. § 10.54(2). See note 7, *supra*.[14]

We also do not agree with the plaintiffs' assertion that such activity is not subject to regulation. The existence of a structure above the bank that would have the potential to alter the bank necessarily involves work either in the resource area itself or in the buffer zone. As the commissioner noted in her decision, determining that the work is conducted in the buffer zone rather than on the bank only changes the level of scrutiny. That is, if the issuing authority determines that a proposed project will "alter" a resource area, the applicant must demonstrate that the work "will contribute to the protection of the interests identified in [the act]." 310 Code Mass. Regs. §§ 10.02(2)(b), 10.03(1)(a)(3).

Moreover, the commissioner's interpretation is consistent with the regulatory scheme. As the Superior Court judge stated: "The basic premise for regulating work in the buffer zone is that, due to its proximity to a resource area, . . . work in the buffer may impact the resource area . . . . [Therefore,] to conclude that work in a buffer zone . . . must comply with the performance standards for that resource area, would generally

---

[14]Under certain conditions, the regulations allow "the selective thinning of tree branches or understory shrubs to establish a specific 'window' to improve visibility," called "[v]ista [p]runing." 310 Code Mass. Regs. § 10.04. The plaintiffs assert that, if the pruning occurs in a resource area, it must meet performance standards. They argue that it shows that the regulations are concerned with the airspace above a resource area. Even assuming that the plaintiffs' interpretation is a reasonable reading of the regulation, this argument does not help them. The plaintiffs must demonstrate that the commissioner's interpretation is not a reasonable one. *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985), quoting *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979). For the reasons stated above, the plaintiffs have not met their burden.

be to conclude that all work in a buffer zone must comply with [those] performance standards . . . . Such a determination is inconsistent with the regulations, which clearly provide different standards for work on a resource area and work in [a] buffer zone."

The plaintiffs next argue that even if the commissioner's interpretation of the regulations is correct, her conclusion that the work will take place solely in the buffer zone is not supported by substantial evidence. "Pursuant to G. L. c. 30A, § 1 (6), substantial evidence is evidence that 'a reasonable mind might accept as adequate to support a conclusion.' In determining whether there is substantial evidence to support the department's decision, 'we must carefully consider any evidence in the record that detracts from the agency's conclusion, [and] "accord due weight to the 'experience, technical competence and specialized knowledge' of the department." ' " *DSCI Corp.* v. *Department of Telecomm. & Energy*, 449 Mass. 597, 606 (2007), quoting *Boston Gas Co.* v. *Department of Telecomm. & Energy*, 436 Mass. 233, 237 (2002). "A court may not displace an [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Comm'n*, 386 Mass. 414, 420 (1982), quoting *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971).

The plaintiffs also assert that the commissioner improperly rejected credibility findings of the magistrate on this issue. Under 310 Code Mass. Regs. § 1.01(14)(b), the commissioner determines "every issue of fact or law necessary to the decision. A final decision may adopt, modify, or reject a recommended decision, with a statement of reasons." If the commissioner rejects an magistrate's finding of credibility, it must be accompanied by an explanation. *Morris* v. *Board of Registration in Med.*, 405 Mass. 103, 110-111, cert. denied, 493 U.S. 977 (1989), discussing with approval *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 99-102 (1982).

Concerning whether there will be work on the bank itself, there is substantial evidence in the record to support the commissioner's conclusion that the work will be performed in the

buffer zone. Two of the plaintiffs' own witnesses testified that the bank is not touched by the open bottom culvert. The plaintiffs argue that they are raising a narrow point of fact that the magistrate found, i.e., whether there would be the cutting of trees and removal of rocks that would constitute work on the bank. They assert that the commissioner improperly disregarded the magistrate's conclusion that the removal of roots growing in and on the inland banks would impair the stability of the inland banks. The plaintiffs claim that, in reaching her conclusion, the commissioner made contradictory findings of fact by rejecting, without proper explanation, credibility findings the magistrate made on this issue.

The commissioner's conclusion did not rest on the magistrate's credibility findings and was supported by substantial evidence. None of the testimony to which the plaintiffs point contains an unequivocal statement that there would be work on the bank itself; rather, as the plaintiffs concede, the witnesses testified to work in the buffer zone that could impact the bank. In addition, although there was testimony that trees whose roots are in the bank may be cut in order to install the culverts, the magistrate credited this testimony by dismissing the specific terms of the superseding order that work on the bank was prohibited. This was improper. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 472 (1981) ("disbelief of any particular evidence does not constitute substantial evidence to the contrary").

We conclude that the commissioner properly relied on the conditions set forth in the superseding order, including the conditions she added, when she determined that the interests of the act were protected. As the Superior Court judge stated, "The [c]ommissioner's conclusions are supported by the evidence in the record and, given the broad standard for work in the buffer zone to a resource area, are deserving of deference."[15]

*Conclusion.* For the reasons set forth above, we agree with

---

[15]The plaintiffs also argue that the commissioner's determination that a wildlife habitat evaluation was not required on the developer's proposal to cross two streams using traditional closed bottom culverts was erroneous as a matter of law, was unsupported by substantial evidence, and improperly rejected subsidiary findings of the magistrate. The defendants argue that the issue of closed bottom culverts is not properly before us because (1) although

the Superior Court judge that the commissioner's decision approving the developer's project was supported by substantial evidence, and was not arbitrary or capricious, or based on error of law. Accordingly, we affirm the judgment of the Superior Court. We deny the request of New England Wind, LLC, for attorney's fees and costs.

*So ordered.*

---

the magistrate discussed it in her recommended final decision, it was not on the list of issues that the hearing addressed; (2) although the plaintiffs raised it in their complaint in the Superior Court, they did not do so in their reply memorandum to the defendants' motions for judgment on the pleadings, except in a footnote; and (3) the plaintiffs did not ask the Superior Court judge to reconsider the issue when his decision affirming the commissioner's decision did not address it. See *Mole* v. *University of Mass.*, 442 Mass. 582, 603 n.18 (2004) (single sentence relegated to footnote is not an argument); *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976), citing *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974) (we do not address argument parties did not raise below). The plaintiffs assert that they did not waive the issue, but despite their "strenuous[]" and "good faith" efforts to condense their argument "to as pithy a statement as possible," they were unable to include it because the judge limited their brief to thirty pages. We conclude that the issue is not properly before us.