NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1044                                          Appeals Court

ROBERT M. LITCHFIELD'S CASE.


No. 13-P-1044.

Suffolk.     February 12, 2014. - August 28, 2014.

Present:  Trainor, Katzmann, & Hanlon, JJ.


Workers' Compensation Act, Injuries to which act applies,
     Coverage, Emotional distress.  Mental Impairment.



     Appeal from a decision of the Industrial Accident Reviewing
Board.


     Charles E. Berg for the employee.
     Paul M. Moretti for the insurer.


     TRAINOR, J.  Robert M. Litchfield appeals the decision of

the reviewing board of the Department of Industrial Accidents

(department) which affirmed a decision of an administrative

judge of the department.  The administrative judge determined

that G. L. c. 152, § 36(1)(j), benefits for permanent loss of

psychiatric function were not available to Litchfield.  We

affirm.

Factual and procedural background. The following facts are taken from the administrative judge's subsidiary findings of fact and are not in dispute. Litchfield "worked as a heavy equipment mechanic for the [t]own of Westford, the employer . . . , from 1984 until suffering an industrial injury to his elbow and shoulder in 2001."

Litchfield "never suffered from anxiety and depression prior to his industrial injury but has since. His depression prevents him from working or doing the things he used to enjoy including interacting with his family. . . . He spends his days watching television, playing computer games and performing light housework. He does get out of the house each day and works as a municipal poll worker on election days. His elbow and shoulder pain are always present. . . . The pain and inability to work, directly caused by the physical injuries, have caused his psychiatric conditions of depression and anxiety."

He has received compensation for these injuries under various sections of G. L. c. 152. In 2004, he was awarded § 35 partial incapacity benefits for his physical injuries. In 2007, he was awarded § 34 temporary total incapacity benefits for these injuries. A panel of this court affirmed that award in Litchfield's Case, 74 Mass. App. Ct. 1115 (2009). Also in 2007, his § 36 claim for loss of function benefits for his shoulder and elbow was adjusted. Finally, in 2009, he was awarded § 34A

permanent and total benefits for these injuries.  Later, he
filed a claim for permanent loss of psychiatric function under
G. L. c. 152, § 36(1)(j).  The denial of this claim is now
before us on appeal.[1]

Discussion.  Authority to determine which version of the
American Medical Association Guides to the Evaluation of
Permanent Impairment applies.  The insurer[2] argued that the
department does not have the authority to determine which
edition of the American Medical Association Guides to the
Evaluation of Permanent Impairment (AMA Guides) applies to their
proceedings and that the AMA Guides (5th ed. 2001) (AMA Guides
5th edition) had been previously adopted.[3]  Compare AMA Guides
(6th ed. 2008) (AMA Guides 6th edition).  See Larson, Larson's
Workers' Compensation Law § 80.07 (rev. ed. 2013) (Larson's
Workers' Compensation).  While the insurer has not raised this
issue on appeal, we will nevertheless address it because we must

---

[1] Our standard of review is controlled by the provisions of
G. L. c. 30A, § 14(7).  See also Higgins's Case, 460 Mass. 50,
53 (2011); Spaniol's Case, 466 Mass. 102, 106 (2013).

[2] The town was insured by Legion Insurance Company (Legion)
at the time of Litchfield's injury.  Because Legion is in
liquidation, the Massachusetts Insurers Insolvency Fund has been
substituted for the insurer.

[3] However, the insurer cited to Larson's Workers'
Compensation, see note 4, infra, to support its argument that
the use of the AMA Guides 5th edition was required in
Massachusetts but did not "indicate how the 5th edition was
supposedly 'adopted.'"

determine which edition of the AMA Guides applies to our determination whether this employee is entitled to additional specific compensation in his G. L. c. 152, § 36(1)(j), claim.[4]

The reviewing board and the administrative judge are both "administrative tribunal[s] and, accordingly, 'possess[] only such authority and powers as have been conferred upon [them] by express grant or arise therefrom by implication as necessary and incidental to the full exercise of the granted powers.'" Taylor's Case, 44 Mass. App. Ct. 495, 497 (1998). The reviewing board is charged with reviewing the decision of the administrative judge and "revers[ing] the decision of an administrative judge only if it determines that such administrative judge's decision is beyond the scope of his authority, arbitrary or capricious, or contrary to law." G. L. c. 152, § 11C. The administrative judge must file a written order concerning whether "weekly compensation or other benefits" are due after conducting a conference, G. L. c. 152, § 10A(2)(a), and if that is appealed, after a hearing, the administrative judge must issue a decision addressing the issues that were before the judge. G. L. c. 152, § 11.

---

[4] Also, at least one workers' compensation authority has determined, incorrectly, that Massachusetts has adopted the AMA Guides 5th edition. See Larson's Workers' Compensation, supra at § 80.07[2] & n.8.

A determination of benefits available for injuries under G. L. c. 152, § 36, "[w]here applicable, . . . shall be determined in accordance with standards set forth in the American Medical Association Guides to the Evaluation of Permanent Impairments."  G. L. c. 152, § 36(2).  However, the relevant statutory and regulatory provisions provide no guidance regarding which edition of the AMA Guides should be used.[5]

Some states have specified by statute or regulation which edition of the AMA Guides is to be applied when rating an impairment, ranging from the AMA Guides 3rd edition (as revised) to the AMA Guides 6th edition.  See, e.g., Colo. Rev. Stat. § 8-42-107 (2013) (3rd edition); Ark. Work. Comp. Commn. Rule 34 (1995) (4th edition); Vt. Stat. tit. 21, § 648 (2013) (5th edition); R.I. Gen. Laws § 28-33-18 (2013) (6th edition).  In these states a newer edition can be applied to a claim only pursuant to a change in the applicable statute or regulation. Other states have provided that the "most recent edition" shall be applied.  See, e.g., Ariz. Admin. Code § R20-5-113.  While

---

[5] General Laws c. 152, § 36(2), provides:  "Where applicable, losses under this section shall be determined in accordance with standards set forth in the American Medical Association Guides to the Evaluation of Permanent Impairments." The regulations provide:  "All claims for functional loss under the provisions of [G. L. c.] 152, § 36 or § 36A, shall include a physician's report which indicates that a maximum medical improvement has been reached and which contains an opinion as to the percent of permanent functional loss according to the American Medical Association's guide to physical impairment." 452 Code Mass. Regs. 1.07(2)(i)(1) (2008).

other states provide that impairment ratings shall be based on the "current" edition of the AMA Guides.[6]  See, e.g., 820 Ill. Comp. Stat. 305/8.1b.  Massachusetts, however, does not provide in either statute or regulation which edition of the AMA Guides should be applied when rating an impairment.[7]

Determining which edition shall be applied in the absence of any explicit guidance "is necessary and incidental" to the board's power under G. L. c. 152, § 11C.  See Perkins's Case, 278 Mass. 294, 299 (1932) (reviewing board has powers which are a necessary implication from those expressly granted by the statute).  The reviewing board must determine whether the administrative judge acted within the scope of his authority in determining impairment ratings pursuant to G. L. c. 152, § 36.

In the present case, the reviewing board determined that it was "appropriate for the administrative judge to utilize the edition of the [AMA] Guides which reflects 'the most current

---

[6] See generally Larson's Workers' Compensation, supra at § 80.07[2].

[7] Beginning in 1958, the American Medical Association published the first article entitled "A Guide to the Evaluation of Permanent Impairment of the Extremities and Back."  Larson's Workers' Compensation, supra at § 80.07[1].  Separate articles followed relating to other body parts.  In 1971 thirteen separate guides were compiled and published as the first edition of the AMA Guides.  The publication has been refined and expanded five times since the 1st edition with the 6th edition being published in 2008.  Ibid.  There are significant differences among the editions, not only in emphasis of certain areas, but also as a reflection of the latest consensus in medical science within its subject matter.

scientific and clinical knowledge,' . . . at the time the adopted medical opinion was given. This will ensure that an outdated methodology is not utilized to determine functional impairment ratings, or, in the case of mental and behavioral disorders, that there is a methodology for making that determination." Both of the physicians who offered impairment evaluations here, did so after publication of the AMA Guides 6th edition. We agree with the board that the AMA Guides 6th edition, "as the most up-to-date version," was appropriately considered and applied in this case.[8]

Reviewing board's interpretation of the AMA Guides 6th edition. Chapter 14 of the AMA Guides 6th edition, for the first time, recognizes and quantifies psychiatric losses of function, providing "ratings for permanent impairment relating to [mental and behavioral disorders]." AMA Guides 6th edition, supra at 348. Compare AMA Guides 5th edition, supra at 167-176.[9] The AMA Guides 6th edition "discusses impairments [which are due] to mental disorders and considers mental and behavioral

---

[8] We also note that the Supreme Judicial Court has cited with approval the definition of "impairment" in the AMA Guides 6th edition. See Commonwealth v. Scott, 464 Mass. 355, 358-359 (2013).

[9] Although the AMA Guides 5th edition included a chapter related to mental and behavioral disorders, it did not include a methodology for assigning a numerical impairment value. See AMA Guides 5th edition, supra at 167-176.

impairments that may result from them." AMA Guides 6th edition,

supra at 347. The AMA Guides 6th edition currently only

considers impairments for selected well-validated major mental

illnesses.[10] Id. at 349.

Litchfield argues that he is eligible for benefits pursuant

to G. L. c. 152, § 36(1)(j),[11] for his loss of psychiatric

function. He argues that rating for this loss of function is

recognized for the first time in chapter 14 of the AMA Guides

6th edition and it does not matter that the psychiatric loss is

a secondary result of his physical injury or that he has already

received compensation under G. L. c. 152, §§ 34, 34A, 35, and

36, for the physical injury from which the psychiatric loss

stems. The board concluded however, and we agree, that the

provisions of chapter 14 do not apply to Litchfield's claim.

---

[10] These currently include:

- Mood disorders, including major depressive disorder and bipolar affective disorder.

- Anxiety disorders, including generalized anxiety disorder, panic disorder, phobias, posttraumatic stress disorder, and obsessive compulsive disorder.

- Psychotic disorders, including schizophrenia.

Id. at 349.

[11] "An award of compensation under § 36 is 'separate and distinct' from benefits an employee is entitled to receive under other sections of the Act, including those for total incapacity." Spaniol's Case, 466 Mass. at 107, citing from Maloof's Case, 10 Mass. App. Ct. 853, 854 (1980).

The explanatory principles of assessment in chapter 14 of the AMA Guides 6th edition provide that:

> "Disorders that are not ratable in this chapter include:

> "Psychiatric reaction to pain:  It is inherent in the [2008] AMA Guides that the impairment rating for a physical condition provides for the pain associated with that impairment.  <u>The psychological distress associated with a physical impairment is similarly included within the rating</u>" (emphasis in original).

AMA Guides 6th edition, <u>supra</u> at 349.

The principles of assessment also provide the rules for using the mental and behavioral ratings in chapter 14.  The rules provide that:

> "In most cases of a mental and behavioral disorder accompanying a physical impairment, the psychological issues are encompassed within the rating for the physical impairment and the mental and behavioral disorder chapter should not be used. . . .

> "In the presence of a mental behavioral disorder without physical impairment or pain impairment, utilize the methodology outlined in this chapter."

<u>Ibid</u>.[12]

---

[12] For the purpose of this opinion, we assume that a permanent loss of psychiatric function is compensable under G. L. c. 152, § 36(1)(j).  This issue was neither raised nor briefed.  Nor has this question been addressed by this court or the Supreme Judicial Court.  See <u>Yeshaiau</u> v. <u>Mount Auburn Hosp</u>., 27 Mass. Workers' Comp. Rep. 15, 19 (2013) (reviewing board held G. L. c. 152, § 36(1)(j), includes compensation for psychiatric injury).

The strategy of this scheme is reiterated throughout the various chapters of the AMA Guides 6th edition. For example, chapter 17 states that:

> "Under most circumstances, however, [the] impairment rating for mental health disorders related to the stressors that often accompany a chronic, disabling musculoskeletal disorder, is captured within the rating for the musculoskeletal disorder itself."[13]

Id. at 581.

Furthermore, chapter 3 of the AMA Guides 6th edition, regarding pain-related impairment, explains that:

> "this edition of the [AMA] Guides does, for the most part, construe pain as one of many manifestations of injuries or diseases, and impairment ratings attempt to take into account the pain that typically occurs in various disorders."

Id. at 36.

> And "[i]n no circumstances should the [pain related impairments] developed using this chapter be considered as an add-on to impairment determinations based on the criteria listed in [c]hapters 4 to 17."

Id. at 39.

Finally chapter 2, regarding practical application of the Guides, states that:

> "[t]he impairment ratings in the body organ system chapters make allowance for most of the functional losses accompanying pain."

---

[13] Chapter 3 of the AMA Guides 6th edition provides impairment ratings "for chronic pain conditions that arise independent of any organ system that is rated by the usual methods." Id. at 581. Impairment ratings for a musculoskeletal condition would use either chapter 15, 16, 17, or chapter 3. Ibid. Combining these ratings is not permitted. Ibid.

Id. at 25.

The presence of a "physical impairment" and the pain associated with that impairment appear to be the key factors when determining whether a psychiatric impairment can be rated under chapter 14.  The administrative judge found facts which indicated that Litchfield's injuries "continue to cause him pain and continue to preclude him from returning to work.  This pain and inability to work, directly caused by [Litchfield's] physical injuries, have caused his psychiatric conditions of depression and anxiety" (emphasis added).  Litchfield does not dispute these findings.

Litchfield, however, argues that psychiatric loss of function is awarded independently in jurisdictions that permit recovery for mental injuries.  He points out that the rules for using chapter 14 provide that:

> "In the event of a mental and behavioral disorder that is judged independently compensable by the jurisdiction involved, the mental and behavioral disorder impairment is combined with the physical impairment" (emphasis in original).

Id. at 349.  Since Massachusetts, as do most jurisdictions, allows recovery for mental consequences of industrial injuries, Litchfield argues that the language in the AMA Guides 6th edition entitles him to recover for his psychiatric loss of

function under G. L. c. 152, § 36, and as rated by chapter 14.[14]
However, the reviewing board rationally interpreted the term
"independently compensable" to require that the psychiatric
injury "be caused by the industrial accident itself."[15]

Moreover, Litchfield misapprehends the meaning of this rule
for the use of chapter 14.  Assuming that the psychiatric loss
of function is independently compensable in a particular
jurisdiction and is ratable under chapter 14, the rule indicates
that a chapter 14 rating can be combined with a rating from a
different chapter in order to determine a whole person rating.
See AMA Guides 6th edition, supra at 20-22 & table 2-1
(explaining the procedure for combining impairment ratings in

---

[14] Mental and emotional disabilities are compensable in
Massachusetts when they are directly caused by an employment-
related accident, without a physical component ("pure" mental or
emotional injury), or when subsequent to a physical injury which
causes a mentally disabling reaction.  See Cornetta's Case, 68
Mass. App. Ct. 107, 108 (2007) (awarding § 34A permanent and
total incapacity benefits for work-related emotional
disability).  See also Larson's Workers' Compensation, supra at
§ 56.03[1].

[15] The term "independently compensable" is not defined in
our case law but other jurisdictions have used the term
consistently with the reviewing board's interpretation.  See
Paternostro v. Edward Coon Co., 217 Conn. 42, 44, 47 (1991)
("The plaintiff has sustained a skull fracture and a dislocated
left shoulder in the course of his employment" which were "two
distinct, independently compensable injuries during a single
incident"); A.D. Stowe, Inc. vs. Ricks, No. 2704-98-1 (Va. App.
Apr. 27, 1999) ("The second injury can be independently
compensable even though it aggravates a pre-existing
condition").

different chapters to obtain a whole body impairment rating). That, however, is not the situation that is presented here.[16]

Section 36 of the statute compensates for specific individual loss of bodily function whether or not this loss is causing total or partial disability. The § 36 rating and compensation scheme is separate and distinct from any determination of the extent that an employee's ratable losses affect earning capacity. Since § 36 provides specific consideration for a specific injury, a combined rating is not considered in determining benefits under its authority. Section 36 has nothing to do with determining loss of earning capacity.

Chapter 14 of the AMA Guides 6th edition is clear in its definition, and the limitation, of its rating of mental and

---

[16] Some state statutes require that a whole person impairment rating be provided to calculate an employee's benefits. See, e.g., Alaska Stat. § 23.30.190(a), (b) (2012) ("the compensation is $177,000 multiplied by the employee's percentage of permanent impairment of the whole person," which is determined by the procedure set out in the AMA Guides); Mont. Code Ann. § 39-71-711 (b), (c) (2013) (requiring that an impairment rating "be based on the sixth edition of the American [M]edical [A]ssociation Guides to the Evaluation of Permanent Impairment" and "be expressed as a percentage of the whole person"); N.D. Cent. Code § 65-05-12.2(10) (2010) ("If the injury causes permanent impairment, the award must be determined based on the percentage of whole body impairment"). The AMA Guides 6th edition specifically notes the broad audience for the publication: "44 [S]tates, 2 [C]ommonwealths, and [F]ederal employee compensation systems . . . either mandate or recommend using the Guides." AMA Guides 6th edition, supra at 20. The AMA Guides 6th edition also asserts that it is increasingly used to "translate objective clinical findings into a percentage of the whole person." Ibid.

behavioral disorders.  The chapter neither rates "psychiatric reaction to pain" nor the "psychological distress associated with a physical impairment" as these disorders are already included and compensated within the rating methodology for the physical impairment under other chapters.  An injured employee, under this scheme, who has been rated for his physical impairment under other chapters of the AMA Guides 6th edition has already been compensated for his pain and the psychological distress resulting from that pain.

Therefore, under the over-all scheme of the AMA Guides, Litchfield's claim for specific compensation under § 36 for his pain and resulting depression and anxiety is not rated, and is specifically excluded under the principles of assessment, including the rules for using chapter 14.[17]  Litchfield remains totally disabled due to the continuing physical consequences of his injuries and due to the resulting pain, anxiety, and depression.[18]  The administrative judge and the reviewing board

---

[17] We acknowledge that, under these rules, a rating for psychiatric impairment which is the result of a physical injury is barred "[i]n most cases" (emphasis added).  AMA Guides 6th edition, supra at 349.  It is therefore possible, according to the AMA Guides 6th edition, to establish a rating for psychiatric impairment resulting from a physical injury.  Even though the AMA Guides 6th edition apparently hold out that possibility, this issue was neither argued below nor on appeal and we therefore do not consider it.

[18] Section 14.4 of the AMA Guides 6th edition provides that as a "general principle . . . a condition is rated as

correctly concluded that a psychiatric reaction to pain is not ratable under chapter 14 of the AMA Guides 6th edition, because "the impairment rating for a physical condition provides for the pain associated with that impairment" and "[t]he psychological distress associated with a physical impairment is similarly included within the rating."  AMA Guides 6th edition, supra at 349.

"We ordinarily accord an agency's interpretation of its own regulations considerable deference."  Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010) (Ten Local Citizen Group), quoting from Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 550 (1991).  The AMA Guides 6th edition acts as an adjunct to the workers' compensation statute. It is required to be used, where applicable, by the statute and is referred to in the regulation.  We therefore treat its interpretation by the reviewing board as we would the board's interpretation of its own regulations.  "The party challenging an agency's interpretation of its own rules has a 'formidable burden' of showing that the interpretation is not rational." Ten Local Citizen Group, supra.  Here, the reviewing board's interpretation of chapter 14 is rational because the chapter clearly states that when a psychiatric disorder is the result of

---

"permanent" when it is not expected to change significantly over the next [twelve] months."

a physical impairment, the psychiatric disorder is not rated under the guidance provided by chapter 14 but is included in the compensation for the physical injury itself.

<u>Decision of reviewing board affirmed</u>.